Good morning, Your Honors, and may it please the Court, I am Bentley on behalf of Roy Anderson Corporation, the appellant. This appeal involves the proper interpretation of Section 27 of the contract between Roy Anderson and New Orleans Glass, which carefully defines both the proceeding and the fora for various disputes that might arise between the parties. The District Court mistakenly construed Section 27 to prohibit Roy Anderson from consolidating its related dispute with New Orleans Glass in a pending arbitral forum. That decision should be reversed and a judgment in favor of Roy Anderson should be rendered for two reasons. First, the plain language of Section 27, when read as a whole and when all of its subsections are harmonized as they must be under Mississippi law, is susceptible of only one reasonable construction, and that is that New Orleans Glass and Roy Anderson agreed to resolve related disputes in a single proceeding and in a single forum, including an arbitral forum. And second, even if Section 27 is ambiguous, because there are two potential reasonable readings of the section, Roy Anderson is entitled to the benefit of the federal presumption favoring arbitration, and that ambiguity should be resolved in favor of compelling arbitration in this case. Turning to the first issue, Section 27 is a carefully drawn disputes resolution provision which identifies the procedure and the forum for any of several disputes that might arise or postures in which disputes might arise between the parties. Section 27.1 makes plain that the entire section, all proceeding subsections, contemplate a first instance or a dispute involving Roy Anderson and New Orleans Glass, a dispute between those parties. Section 27.3, which is the section that's discussed and is most applicable here, provides that when there is a dispute between Roy Anderson and New Orleans Glass and there is a related dispute between Roy Anderson and a third party, that Roy Anderson may elect to require New Orleans Glass to participate in that same proceeding, in that same forum, and that forum can include an arbitral forum. The term forum is not limited in any respect in that section. JUSTICE KENNEDY. Well, Mr. Abernathy and others on the brief certainly have pointed out that this could have been written clearer. It seems to me that the difficult words in 27.3 are its claims and defenses, and you obviously have your interpretation of what that means, but it's a very limited phrase, particularly if you start with claims and then any claims that New Orleans Glass may have. There are no claims. Is that correct, that New Orleans Glass is bringing the arbitral, just their defenses to whatever indemnity they may be owing or any responsibility they may be having on the asserted construction defects?  ABERNATHY. That's correct, Your Honor. At this point, the only dispute would involve a defense by New Orleans Glass against Roy Anderson's claim for defense and indemnity. JUSTICE KENNEDY. Well, it's been pointed out that there are other ways that this sort of venue or limitation could have been set out and has been set out in contract. You have argued under the Four Corners rule of Mississippi that we can't look at any of that. Explore that a little bit with me. It seems to me in interpreting a contract, it's one thing to say that it's only the words of these contracts that can control, but when you're looking at their potential ambiguity, whether you're looking at specific other contract terms or not, you're still informed by common sense of what is the best way, if that's what they had in mind, to have put this. And I don't know if other contractual terms and related contracts are outside the Four Corners or not. I mean, you're just talking about what's the common sense way to put something like this. ABERNATHY. I take your point, Your Honor, and I have two responses, if I may. First, we have argued, and I think we're correct, that the other contracts between other subcontractors that are not at issue in this Federal court dispute are extrinsic evidence and that this court under Mississippi law should not resort to that type of evidence unless the plain language and the canons don't resolve the dispute. But the contracts are on the record, at least the arbitration or the forum selection provision, so I do want to address that. JUSTICE SCALIA. And what are all those other contracts that are in between? ABERNATHY. There are 17 subcontractors, or there were 17 subcontractors involved in this construction project. The other 16 subcontracts have a slightly differently worded dispute resolution provision. And so that language that New Orleans Glass is discussing is between Roy Anderson and  JUSTICE SCALIA. Was there more negotiation on this contract than in any other, or is that not part of the record? ABERNATHY. There must have been. It's implicit that there must have been negotiation. In fairness, we are stepping outside of the record, but it's my understanding from the client that this was a negotiated contract between employees at Roy Anderson and employees at New Orleans Glass. JUSTICE SCALIA. That's not part of the record. I thought that was in some of your briefing, that there was some changing of terminology in some of these provisions. ABERNATHY. Well, if you compare the two contracts, we accept that there is different language, and so there must have been negotiation at some point to achieve that different language. But going to the two separate contracts, I do want to explain why I do not think that even if you read that language, it helps New Orleans Glass in this case. What New Orleans Glass complains about or points out in the other subcontracts is that in a single provision, the language provides that disputes between Roy Anderson and New Orleans Glass may be consolidated in a single proceeding, in a single forum, and then it has the modifier including arbitration, administrative authority, or court. That language does not appear in the contract that we're discussing. But to those points, first, Section 27.1 covers the first point because it makes clear that everything in Section 27, every provision presupposes a dispute between Roy Anderson and New Orleans Glass. In Section 27.3, we contend that the striking of arbitration, administrative authority, or court, leaving forum unmodified, actually makes forum as broad as possible. So certainly, it includes an arbitral forum. And on that point, I think the authorities are clear from the U.S. Supreme Court that arbitration is simply a specialized type of forum selection clause. So the parties, when they agree to resolve disputes in a forum, acknowledge that that is a broad forum and administrative authority. And so I think even if you look, Your Honor, at the other subcontracts and contemplate them when resolving this dispute, they don't advance New Orleans Glass's position. It seems like another way to read 27.3 in conjunction with 27.4 is that 27.3 concerns situations in which disputes have already arisen involving other parties, and 27.4 is talking about claims just between the subcontractor and contractor. Now, I don't know which way that cuts, because obviously, we did have a dispute already arisen before this came, but 27.4, it seems to me, is almost a bigger problem for you than what you've been talking about, because that freestanding position, it seemed to say, New Orleans Glass has every right to go find a circuit court or a trial court somewhere and sue you. Your Honor, I would agree it's a bigger problem only if it's read in isolation. If you take 27.4 and treat it as a Trump provision, that you start understanding Section 27 with Section 27.4, then it might create difficulties. But that is not how this Court construes contracts. In fact, Judge Prado pointed that out in the Kline decision, that you do not tailor a contract to fit one single provision within the contract. Instead, you start with the beginning, you read the Section 27 as a whole, and you harmonize the provisions if possible. And that is possible here, because as you were pointing out, Section 27.4 deals with a dispute solely between Roy Anderson and New Orleans Glass, when there is no related dispute pending into which that dispute could be consolidated. But when Section 27.4 is read in context of Section 27.3, which clearly is a consolidation provision, it cannot be that the parties intended for 27.4 to trump or override Section 27.3. Under 27.3, can Roy Anderson pick the forum, or must it be a situation where already a third party has chosen the forum? Well, this case arises where the third party has chosen the arbitral forum. I think in terms of selecting the forum, there could be a possibility where a party sues Roy Anderson in court, and Roy Anderson has an arbitration agreement with that party, and then Roy Anderson compels that party into arbitration, and you would end up in an arbitral forum that way. But the way Section 27.3 — And then they could bring in New Orleans Glass? If there was a related dispute, if there was a dispute involving the same general subject matter, yes, then at that point, they could consolidate the related claims in the arbitral forum. That's exactly what New Orleans Glass agreed to. And the other subcontracts demonstrate that this is a common provision, and it's in fact an efficiency provision. The reason that parties agree to this is because you want consistent results, you want related claims resolved in a single forum, be it a court or an arbitral forum, and you want the outcome — all parties to be in the case and to have the outcome consistent. Let me ask you about one of the phrases in 27.3, and I think it's in perhaps some of the others. Yes, it is. If a contractor has a claim, same general subject matter, with any third party, no comma or anything, if so selected by the contractor, what does that modify? If so elected — selected — elected by the contractor? I think as far as what it modifies, I think it is a — the language provides that Roy Anderson — this is Roy Anderson's election to consolidate the related disputes, if it so chooses. Well, what follows if so elected is the contractor — subcontractor's action. So if so elected — if the contractor — subcontractor wants to do something, if so elected by the contractor, it has to be asserted in the same proceeding. Is that — I may have confused it. But are you saying that it's your option if Mr. Abernathy Klein wanted to bring it to separate action, that if so elected means that Roy Anderson could let it continue to Yes, that is — that is our position. I think that's what the language bears out, that if under your hypothetical New Orleans class had a claim against the third party that was related to pending claims that New Orleans — that Roy Anderson had with the third party, then yes, Roy Anderson could elect to consolidate all of those claims in a single proceeding. Or elect not to. Or elect not to, correct. And if I can, I do want to turn to the second point, because even if you disagree with me that the contract is plain on its face or that it can be resolved under Mississippi law, I think the best New Orleans class can do is demonstrate that there were two reasonable readings of the contract. I certainly do not think our harmonious reading is unreasonable. And so what — in that case, if the language is ambiguous, it is our position that this is a scope question, and therefore Roy Anderson is entitled to the presumption favoring arbitrability under the Federal Arbitration Act. And as this Court is well familiar, there's a two-step process when determining whether parties have agreed to arbitrate. The first step is validity. And if you look at the Supreme Court cases on this point, and particularly Granite Rock from 2010, what the Court is discussing in terms of validity is questions of contract formation. And in Granite Rock, even questions of when the contract was formed, because it was relevant to whether it was formed prior to the dispute arising. It's also looking at threshold questions of defenses to arbitrability — defenses to contract, I'm sorry — unconscionability, fraud in the inducement. But it's a very limited threshold question. And once you cross that threshold and you're actually construing the language of a contract to determine whether, under these circumstances, the parties agreed to arbitrate, the party with compelling arbitration or seeking to compel arbitration is entitled to the presumption of favoring arbitration, and the ambiguity has to be resolved in favor of arbitration. Did Judge Osherden address that point? We think, Judge — as we read Judge Osherden's opinion, he would have applied the presumption of arbitrability had he had to reach that. Now, he read the language against us and did not resort to any canons or any — He found it wasn't ambiguous. Correct. But if you read his opinion, he sets out the general rules and the FAA presumption, and he — in fact, that's an important point, because Judge Osherden acknowledges that there are certain instances, certain circumstances, where a New Orleans class could be compelled into arbitration. He just determines that those circumstances involve situations where there is a claim only between New Orleans class and the third party. And I think that is a clear demonstration that we're in a second-step analysis. If there are — as the Court said in first options, if the Supreme Court — if the parties have a contract that requires arbitration of some disputes, then we're over the threshold, we're in the second question, and the federal presumption applies. That's exactly what we have here, a contract that undeniably requires arbitration of some disputes. The question is to which disputes benefits from the federal presumption favoring arbitration. If there are no further questions — Okay. Thank you, sir. Thank you, Your Honors. We have some time left for above. Mr. Abernathy? Good morning, Your Honors. I'm Phil Abernathy for the Appley New Orleans Glass Company, and we're here today to analyze a disputes clause that the parties agreed to in a subcontract. And when you analyze that disputes clause, I think you're going to see that the district court got it exactly right when the district court said the agreement of the parties is clear on the face of the document. And not only is it clear on the face of the document, the disputes clause here is very unique. It's totally different from any other disputes clause in the cases cited and relied on by the appellant. When you put pencil to paper and diagram this disputes clause, what you'll see is it starts with a general and overriding rule, and then there are three subparts that modify that general rule. The general and overriding rule says clearly the parties agreed to litigate any claim between them and a court of competent jurisdiction in Mississippi. Now, there are three subparts that modify that general rule. The first part, subpart, is 27.5, which says after a dispute arises, the parties can mutually agree to owe arbitration. The second and third subparts are consolidation of claims clauses, 27.3 and 27.2 are consolidation of claims clauses. The first one says if the general contractor has a claim against the owner or a dispute with the owner, and the subcontractor wants to assert a claim against the owner, then the subcontractor has to submit his claim to the general contractor, and the general contractor will prosecute that claim on his behalf against the owner. See, my problem is it seems to me you read out 27.3 when you do that. I mean, 27.3 is specific to the situation that you had here. You had an ongoing arbitration proceeding between the contractor and a third party, and that's specifically and particularly what 27.3 deals with. Well, Judge Davis, we believe that 27.2 and 27.3 consolidate claims. Now, the claim brought by Roy Anderson in the underlying action is a claim by the owner. Exactly. A third party. A third party to this contract. Well, but when you read 27.2, they specifically talk about the owner, capital O, so they know how to talk about claims by or against the owner. Well, it's still a third party, a third party to this contract. But when you read those two together, what you'll see is 27.2 says if the subcontractor has a claim against the owner, bring it to the general contractor, and the subcontractor's recovery will be limited to whatever the contractor gets from the owner. Then you go to 27.3, also a consolidation of claims clause, and what it provides is if the general contractor has a claim against a third party and the subcontractor has a general contractor. But that's not what we have here. The owner has made no claim against New Orleans Glass. They've not named New Orleans Glass in any proceeding. I don't read 27.3 as having a condition that the subcontractor have a claim against a third party. Tell me how you read that, how you get that out of 27.3. Your Honor, 27.3 says if the contractor has a claim or dispute involving the same general subject matter. What subject matter? The subject matter of a claim that the subcontractor has against that same third party, because that's in the next line. If the contractor has a claim or dispute involving the same general subject matter with a third party, the subcontractor shall assert its claim against that same third party. Claim or defense. Or defense. Yeah, we're talking about a defense. Well, we're not talking about a claim that's made at all against New Orleans Glass by the third party or by the third party against New Orleans Glass. What we're talking about is a straight indemnity claim that Roy Anderson is making against New Orleans Glass. So New Orleans Glass has a defense that they, the question is whether they have to assert that defense in 27.3, right? And the question is, does 27.4 not squarely cover that? If Roy Anderson has an indemnity claim against New Orleans Glass, it falls squarely within 27.4, which said any dispute between those two parties will be litigated. But it seems to me you don't have to read, you can harmonize all of these provisions if you say that 27.3 applies to the specific situation where the contractor has a dispute with involving the same subject matter with a third party, then the subcontractor will assert its defenses in that same claim. That's specific to what we have here. And if you read that as requiring the subcontractor to come into that proceeding, and you read 27.4 to apply strictly to where there's a, strictly a claim between the subcontractor and the contractor, then that's what they agree to litigate in accord. Well, the way I would harmonize those two, Your Honor, is that 20, just like the district court said, 27.3 is worded such that the subcontractor has to have a claim or defense against the third party, growing out of the same subject matter as the contractor's claim or defense against that third party. Again, if it's the owner, you go back to 27.2. If it's a third party, you go to 27.3. Even though the owner is a third party to this subcontract, it's a defined term in 27. See, I read that as, 27.3 is saying if the contractor has a claim or dispute with any third party that involves the same subject matter that the subcontractor is interested in, then the subcontractor will assert his, in this case, a defense in the same proceeding. It's the same wording, Your Honor, that's used in 27.2. But in 27.2, we know that they're only talking about affirmative claims by the subcontractor because it says the subcontractor's recovery. You can't have recovery unless it's an affirmative claim by you. The subcontractor's recovery will be limited or relief will be limited to whatever the contractor gets from the owner. So the reason the appellant is traveling under 27.3 is because it's easier for him to try to fit this indemnity claim into 27.3. It's 27.2 that should govern any claims involving the owner. So, under your scenario, there's going to be a second separate lawsuit, and so part of the case is going through arbitration and part of the case is going through a lawsuit in the courtroom? That's correct, Your Honor. The owner, keep in mind, the owner here and the developer have only asserted claims against Roy Anderson. They didn't name New Orleans Glass. But they involve action by New Orleans Glass. They may, depending on what the owner proves at trial. But because of that, Roy Anderson has to go to arbitration. His general contract with the owner says all disputes will be arbitrated. So he has to go to arbitration and defend the owner's claims. Now if he loses and he loses on a point that he believes is New Orleans Glass's fault, then he's got an indemnity claim against New Orleans Glass. But under 27.4, he's got to bring that indemnity claim against New Orleans Glass in a court of competent jurisdiction in Mississippi. That's what he agreed to. And is it ripe to bring that lawsuit while mediation is going forward, or must he wait till mediation is complete before that action could be filed? He can file it, but it won't ripen, an indemnity claim won't ripen until he's held liable by the arbitrator in a manner that he says is attributable to New Orleans Glass. Then he's got to come under 27.4 to court and prove that. The owner sued Anderson for defective work, including the glass work performed by New Orleans Glass, as I understand it, or presented that in the arbitration. That's what Roy Anderson said, but Roy Anderson says that about every subcontractor on the job. He sued them all, all 17 of them. But there's no doubt that the arbitration proceeding involves the subject matter of New Orleans Glass's work. It may, Your Honor, but it may be a design defect, it may be the fault of Roy Anderson itself. That's going to be decided by the arbitrator when the owner states his claim against Roy Anderson. But that issue is presented in the arbitration proceeding. Construction defects are presented. Right, including the glass. Including, well, I don't think we've gotten that far into marriage yet. Certainly there— I'm talking about the claim that's presented in the arbitration proceeding by the owner. Didn't he allege something was wrong with the glass work? He alleged leaks in general, Your Honor. Now, whether those leaks were the result of a design defect or New Orleans Glass's work or supplier of the glass, that hadn't been fleshed out. I understand. But that claim is right there in the arbitration proceeding. That claim is there. Yes, Your Honor. Well, as that arbitration works its way through and the 16—is it 16 other subcontractors or 16 in all? I don't remember. Sixteen or 17 parties, and some of them will be identified as actual potentially negligent parties, could be anyway. So reading—I mean, you want to read, it seems to me, 27-2 in isolation. If the contractor has a dispute with the owner, that is dealt with solely under 27-2, and any disputes that may involve your client are dealt with separately under 27-4. It seems to me that the natural progression of this is 27-2 is talking about what you're saying. And if Roy Anderson has any—if New Orleans Glass has any dispute potentially with Roy Anderson on matters that are growing out of that same dispute that Roy Anderson has with the owner, then 27-3 says how to resolve them. And 27-4 is talking about things unrelated to anything that would arise under 27-2. Now, I mean, you're a sharp lawyer, and you're making a reasonable argument there. It seems to me what we're dealing with here is either clarity or non-clarity. And you're saying it's as clear as can be, and you may be right, Mr. Bentley may be right, but don't we have to deal with also the presumption in favor of arbitration? And I understand your position is that coverage of the contract—not coverage, application of arbitration is what we're looking at, not scope. But we know arbitration exists here, and it is valid, it exists under this contract. Why isn't that then a scope question since we know arbitration has been contracted for? The reason the federal policy or the federal presumption doesn't apply here, there are several reasons. First off, the federal policy only applies if you've got an arbitration clause that's ambiguous as to its scope, and then the policy is applied. We don't believe there's an ambiguity here. Just like the district court said, it's clear on its face. But even if you go beyond that, the second reason it doesn't apply is because we don't even have an arbitration clause here. We've got a litigation clause and two consolidation of claims clauses. We found no case, and the appellant has cited none, in which a court has applied the federal presumption favoring arbitration to a consolidation of claims clause that never even mentions the word arbitration. Now the appellant is going to say, well, the Encompass Power v. Echo case did that in this court, and it's true that in Encompass Power there was a consolidation of claims clause that didn't mention arbitration, and the court—Judge Davis, you were on the panel—the court compelled arbitration. But the reason the court did that, it made very clear, the general contract between the general contractor and the owner had a broad arbitration clause, and it said all disputes will be arbitrated. And the panel in Encompass Power said that subcontract clause was incorporated—excuse me, that general contract clause was incorporated into the subcontract. That's why it was done in that case. Here there can be no dispute that the general contract arbitration clause is not incorporated into the subcontract, because our subcontract says claims between Anderson and New Orleans Glass will be litigated. And then it says any conflict between the general contract and the subcontract, the subcontract prevails. So we've got just the opposite case that we had in Encompass Power. So taking that case aside, I don't believe the appellant will be able to cite you any case in which the court has applied the federal presumption in favor of arbitration to a consolidation of claims clause that never mentions arbitration, when there's also a general clause that says all claims between those two parties will be litigated. Judge Southweth, I think you hit it right on the head in your question to the appellant earlier. The most interesting part of this whole argument to me is, how does the appellant ask you to give them the same relief under these clauses that it got under the clauses with the other 16 subcontractors? The other 16 subcontractors' disputes clause and consolidation of claims clause is set forth in the record at page 200. Roy Anderson put it in the record at page 200. And I urge you just to look at those clauses, because what you'll see is the disputes clause in those other 16 subcontracts says all disputes will be decided by binding arbitration. And then its consolidation of claims clause says if the contractor believes any controversy between the contractor and the subcontractor affects claims asserted against the contractor by the owner or a third party, then the subcontractor agrees to the same forum as the owner and the contractor, including arbitration. I don't understand how we can consider these extraneous contracts. I mean, they may have been separately negotiated. I mean, who knows? The reason, Your Honor, is because Roy Anderson has put them in the record by seeking the same relief from them that they're seeking from you here. So the question I hope they'll answer when I sit down is how do you get the same relief out of these clauses in the New Orleans Glass contract as you got from those clauses in the other 16? They're very clear. They couldn't have stated it any better to get the relief that he's asking you to give him today. But those clauses are the polar opposite of the New Orleans Glass clause, which says all disputes between us will be resolved by litigation. And a consolidation of claims clause, which simply says if you've got a claim subcontractor against a third party, you've got to bring it to the same forum. Are there any consolidation clauses in those other contracts? 27.1.3, virtually the same numbering system in the other contracts, is the consolidation of claims clause. You're talking about for the other 16, however many it is, subcontracts, there are consolidation clauses there, too. Yes. And they specifically say if the owner asserts a claim against the contractor and the contractor believes it involves a defense by the sub, the subcontractor has to join that proceeding. That wording is totally absent from this subcontract. And I think when you look at those subcontracts and when you read 27 in this subcontract in that context, you're going to conclude the same thing the district judge said. The district judge told Roy Anderson, you could have said that, and if you had said that, you would have gotten the result you're looking for. But in the New Orleans Glass subcontract, you didn't say that. You said basically just the opposite. You said all claims between the two of us will be litigated. And when it comes right down to it, Judge Davis, you used these words, your panel did in Sharp v. AmeriPlan, you said it may seem arbitrary that some parties have to arbitrate while others may pursue litigation, but that result flows from the wording of the agreements. I agree with that, too. And that's what we have here. And Judge Prado, you addressed an indemnity claim in Klein v. Neighbors Drilling. You wrote that opinion, and you said an indemnity claim is solely a claim by the general contractor against the subcontractor. And that's what we have here. Their claim for indemnity, whenever it arises, if it ever arises, is going to be a claim by Roy Anderson against New Orleans Glass. And it falls squarely into 27.4, which says it has to be litigated in a court of competent jurisdiction in Mississippi. I take it I didn't write anything useful on your side? Hopefully this one will be useful, Your Honor. Thank you. Thank you, sir. Okay, Mr. Bentley, back to you, sir. Thank you, Your Honors. Let me start with the other contracts, because that's been discussed heavily by my friend. The only reason that this court would resort to the other contracts, which are extrinsic evidence, as Judge Davis pointed out, is because there's an ambiguity in this contract. And if that's the case, the FAA squarely resolves the ambiguity in Roy Anderson's favor. There would be no need to resort to any canons or any other contracts. That's exactly what the FAA short circuits, because the parties need a speedy referral to arbitration, which is what they've agreed to. Is the case law as thin, as Mr. Abernathy says, about clauses that are written in this way? We don't think so. I think Encompass Power, I disagree. I think it's directly on point. I think Encompass Power involved the almost exact same scenario where you had a construction project, claims of construction defect, and an owner arbitrating with a general contractor. And you had a provision, a consolidation provision, that says disputes between the subcontractor and the contractor shall be decided by the same tribunal in the same forum as disputes between the contractor and the owner. There was no explicit reference to an arbitral forum, but still this court said that when you have agreed to that type of provision, you accept that a forum includes an arbitral forum, and you can be compelled into that arbitration if your claims are related. And that's exactly what we have here. Briefly, Judge Davis, I do want to point, cite you to the record at pages 158 through 65. That is where New Orleans Glass acknowledges that the third party's arbitration claim implicates its glasswork. It does deny that anything is defective, but it's certainly clear that all parties understand that New Orleans Glass's work is implicated in the arbitral proceeding. Does the contract define third party anywhere? No, it does not define third party. Whether it includes owner or not is what I'm concerned with. No, it does not define third party. It does, owner, I think is a specific reference to the owner under the prime contract, which was Seabreeze I, LLC. They are not the party involved in the dispute with Roy Anderson. That is the current homeowners association that owns the condominium post-construction. I think they are clearly a third party. Aren't they the successor to the owner as the contract was originally written? Well, they could be considered a successor to the owner, but I think if you're looking for a definition of owner, it's very clear under the prime contract, and even under the subcontract. I'm more concerned by definition of third party, whether it includes the owner or not. I think third party under section 27.3 includes any party other than the contractor and the subcontractor, if you read it. They're the two parties to this contract. Exactly. That's exactly right, Your Honor. Thank you. Okay. Thank you, gentlemen. We have your case, and that completes the docket for today, and we'll be in recess until 9 o'clock tomorrow morning.